# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN JOE WHITE,<br><br>        Petitioner,<br><br>  v.<br><br>KEN CLARK, Warden,<br><br>        Respondent. | 1:09-cv-00130 AWI JMD (HC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in custody of the California Department of Corrections and Rehabilitation pursuant to a 2006 conviction in the Fresno County Superior Court. Petitioner was convicted of forcible rape, sexual penetration by force, and forcible oral copulation. He was sentenced to sixty-nine years in prison and assessed a twenty dollar security fee.

On August 9, 2006, Petitioner appealed the conviction to the California Court of Appeal, Fifth Appellate District. (See Lodged Doc. 1.) On May 1, 2007, the court determined that the sentence had not been properly imposed. (See Lodged Doc. 6.) The California Supreme Court granted review and transferred the matter back to the appellate court. (See Lodged Docs. 7-9.)

On December 5, 2007, the appellate court affirmed the judgment. (See Lodged Doc. 12.)

On January 10, 2008, Petitioner filed a petition for review with the California Supreme Court. (See Lodged Doc. 13.) The court denied review on February 20, 2008. (See Lodged Doc.

14.)

On June 26, 2007, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court. (See Lodged Doc. 15.) The petition was denied on August 21, 2007. (See Lodged Doc. 16.)

On December 10, 2007, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, Fifth Appellate District. (See Lodged Doc. 17.) On June 18, 2008, the court denied the petition in a reasoned opinion. (See People v. White, No. F050184, 2007 WL 4247728 (Cal. Ct. App. May 7, 2008); Pet. Ex. A; Lodged Doc. 18.)

On September 22, 2008, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (See Lodged Doc. 19.) The petition was denied on May 13, 2009. (See Lodged Doc. 20.)

Petitioner filed the instant petition for writ of habeas corpus on January 14, 2009. (Pet., ECF No. 1.) Prior to the Court ordering Respondent to appear, Petitioner filed a first amended petition for writ of habeas corpus on August 7, 2009. (Am. Pet., ECF No. 9.) Respondent filed an answer to the amended petition on December 2, 2009. (Answer, ECF No. 16.) Petitioner filed a traverse on March 3, 2010. (Traverse, ECF No. 22.)

**FACTUAL BACKGROUND** [1]

In the early morning hours of January 4, 1996, 14-year-old Elizabeth was asleep in the living area of an apartment she shared with her mother, her 16-year-old brother, her four-year-old sister, and her 46-year-old grandfather. Her brother and grandfather were asleep in the bedroom. Her mother and sister were sleeping nearby. Elizabeth awoke when she felt someone rubbing her vagina underneath her panties. She was told by defendant, an intruder, that if she did not cooperate he would kill her. He told Elizabeth that he had a gun and that if she did not remain quiet he would kill her sister. She was raped (count 1), orally copulated (count 4), and her vagina and anus were sexually penetrated by force with a finger (counts 2 & 3). Elizabeth's mother woke up when defendant dropped something. Defendant told the mother not to move, that he had a gun. Defendant left.

The mother called the police. Elizabeth was examined at the hospital, and swabs were taken from her. In addition, the sleeping bag she was using at the time was kept as evidence. In September of 2003, DNA from the sperm gathered from Elizabeth and from the sleeping bag was identified as belonging to defendant. Neither Elizabeth nor her mother was able to identify defendant at trial. Because of

---

[1] The Factual Background is derived from the factual summary set forth by the California Court of Appeal, Fifth Appellate District, in its opinion of December 5, 2007, and are presumed correct pursuant to 28 U.S.C. §§ 2254(d)(2), (e)(1). See People v. White, No. F050184, 2007 WL 4247728, at *1-2 (Cal. Ct. App. Dec. 5, 2007); (Lodged Doc. 12).

the passage of time, Elizabeth was not able to recall all the details of the assault at trial. The officer who took her statement testified about the statement Elizabeth gave shortly after the attack.

Defendant did not challenge that a sexual assault on Elizabeth had occurred. His defense was that the DNA wrongly identified him as the perpetrator.

Defendant was convicted of forcible rape (§ 261, subd. (a)(2))[2], forcible oral copulation (§ 288a, subd. (c)(2)), and two counts of sexual penetration by force (§ 289, subd. (a)(1)). In addition, defendant admitted he suffered a prior serious felony (burglary) within the meaning of the Three Strikes law (§ 667, subds.(b)-(i)), suffered a prior serious felony within the meaning of section 667, subdivision (a)(1) and suffered four prior prison terms (§ 667.5).

The court sentenced defendant to the aggravated term of eight years for each of his convictions. These terms were doubled to 16 years based on the strike. The trial court gave the following reasons for imposing the aggravated terms: "[F]irst of all, given the circumstances of these crimes, the manner in which they were committed, the fact that they were committed at night in the victim's own home with her family present, and that there were threats made to her and her family, her age at the time of the commission of this crime, and her particular vulnerability with her mother and baby sister in the room when this occurred and the threats to them, first of all, I find that the circumstances in aggravation for those reasons alone greatly outweigh any in mitigation that may apply in this case. And I can't think of any, frankly, that apply to the circumstances of this case. And for that reason I'm going to apply the aggravated term as to each of these four counts."

The court then discretionarily ordered that these terms run fully consecutive pursuant to section 667.6, subdivision (c). The court's reasons were as follows: "I also find in light of your criminal history and the four prison priors, which counsel has referred to here, which were found true or admitted by the-by you during the course of this case, and the circumstances of the crime itself, that fully consecutive sentencing is not only appropriate but demanded, really, in the court's view under the circumstances of this case."

The court added five years for the section 667, subdivision (a) enhancement. The court imposed and then struck the four one-year prior prison terms pursuant to section 1385. Defendant was sentenced to prison for a total term of 69 years.

(Lodged Doc. 12.)

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction in question arose out of a judgment by the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28

---

[2] Unless otherwise indicated, all statutory references are to the California Penal Code.

1   U.S.C. § 2241(d).  Accordingly, the Court has jurisdiction over the action.

2          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
3   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.
4   Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)
5   (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds by
6   Lindh, 521 U.S. 320 (1997)) (holding AEDPA only applicable to cases filed after statute's
7   enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by
8   its provisions.

9   **II.  Legal Standard of Review**

10         The instant petition is reviewed under the provisions of the AEDPA.  Lockyer v. Andrade,
11  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted
12  unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an
13  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of
14  the United States" or "resulted in a decision that was based on an unreasonable determination of the
15  facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see
16  Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

17         As a threshold matter, this Court must "first decide what constitutes 'clearly established
18  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. 63, 71
19  (2003) (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law,"
20  this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
21  of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412.  "In other
22  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
23  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

24         Finally, this Court must consider whether the state court's decision was "contrary to, or
25  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
26  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant
27  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
28  question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that the federal habeas court give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a state procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly

1   established federal law." Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal
2   habeas court looks through ambiguous or unexplained State court decisions to the last reasoned
3   decision in order to determine whether that decision was contrary to or an unreasonable application
4   of clearly established federal law. Id.
5         Here, the Fresno County Superior Court, California Court of Appeal, and the California
6   Supreme Court adjudicated Petitioner's claims. As the California Supreme Court issued a summary
7   denial of Petitioner's claims, the Court "look[s] through" that court's decision to the last reasoned
8   decisions. See Ylst v. Nunnemaker, 501 U.S. at 804. In this case there are two applicable decisions,
9   the appellate court's December 5, 2007, and June 18, 2008, decisions.

10  **III.  Review of Petitioner's Claims**

11        Petitioner makes five claims in his petition. First, Petitioner contends that the trial court's
12  imposition of consecutive upper terms violated his Sixth and Fourteenth Amendment rights. (Am.
13  Pet., 3.) Second, Petitioner claims that the superior court's dual use of facts to impose the upper
14  term and consecutive sentences violates his constitutional due process rights. (Id. at 9.) Third,
15  Petitioner claims that his counsel was constitutionally ineffective in failing to object to the dual use
16  of facts. (Id.) Fourth, Petitioner claims that the twenty dollar security fee was erroneously imposed
17  retroactively. (Id.) Fifth, Petitioner claims that the offenses with which he was charged were time
18  barred.

19  A. Ground One

20        Petitioner claims that his Sixth Amendment right to a jury and Fourteenth Amendment rights
21  to due process and equal protection were violated when the court committed sentencing error by
22  imposing upper term consecutive sentences.
23        Petitioner's Sixth Amendment argument stems from the clearly established federal law
24  derived from Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny. In Apprendi, the
25  United States Supreme Court overturned a state sentencing scheme as violative of a criminal
26  defendant's right to have a jury verdict based on proof beyond reasonable doubt. The sentencing
27  scheme permitted a trial judge to enhance a defendant's penalty beyond the prescribed statutory
28  maximum upon a finding by a preponderance of the evidence that the defendant committed the crime

with racial animus. Id. at 469. The Supreme Court held that the Sixth Amendment right to a jury trial required that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Blakely v. Washington, 542 U.S. 296, 303-304 (2004), the high court explained that the "statutory maximum" is the maximum sentence a judge may impose based exclusively on the facts reflected in the jury verdict or admitted by the defendant and not the maximum sentence a judge may impose after finding additional facts.

The last reasoned state court decision on this issue was by the California Court of Appeal on December 5, 2007. The decision was issued after being remanded by the California Supreme Court for consideration of two new state cases; namely People v. Black, 41 Cal. 4th 799 (2007) (hereinafter Black II), and People v. Sandoval, 41 Cal. 4th 825 (2007). After reconsideration, the appellate court affirmed the judgment.

*1. Upper Term Sentencing*

Petitioner claims that, pursuant to Cunningham v. California, 549 U.S. 270 (2007), the trial court erroneously imposed the upper term sentence for each count and ordered the sentences to run consecutively in violation of the Sixth Amendment. In Cunningham, the Supreme Court found California's determinant sentencing law violated the Sixth Amendment because it "authorizes the judge, and not the jury, to find the facts permitting an upper term sentence." Id. at 293. However, the court went on to invite California to adjust the sentencing scheme and noted that "several States have modified their systems in the wake of Apprendi and Blakely to retain determinate sentencing. They have done so by calling upon the jury . . . to find any fact necessary to the imposition of an elevated sentence." Id. at 293-94. The California Supreme Court met the high court's challenge in Black II, holding that:

> as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of Apprendi and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to a jury trial.

Black II, 41 Cal.4th at 812.

In the instant case, the state appellate court affirmed the imposition of the upper term relying

on <u>Blakely</u> and <u>Black II</u>. In finding that Petitioner's criminal history made him eligible for imposition of the upper term, the appellate court noted that:

> [Petitioner]'s prior criminal history here, spanning more than 30 years, was established by overwhelming evidence. His life of crime began when he was 12 years old with a finding that he committed a petty theft. His juvenile criminal history continued with adjudications for robbery, burglary, grand theft on two occasions, battery on two occasions, and petty theft. His adult criminal history reflects continuing criminal behavior, including trespassing, vandalism, numerous burglary convictions, numerous drug crimes, and two separate convictions for assault with a deadly weapon. He served several terms in prison and violated parole on 12 occasions.

<u>White</u>, 2007 WL 4247728 at *4. The court found that, because Petitioner's criminal history was sufficient to make him eligible for the upper term, judicial fact-finding as to additional aggravating circumstances did not violate the Sixth Amendment. <u>Id.</u>

The appellate court's reliance on <u>Black II</u> is not an unreasonable application of Supreme Court law because <u>Black II</u> modified the California determinate sentencing law to comport with the Sixth Amendment limitations addressed in <u>Cunningham</u>. Because Petitioner's criminal history made him eligible for imposition of an upper term, the trial court's decision to impose that term did not violate Petitioner's constitutional rights.

*2. Consecutive Sentences*

Petitioner claims that the imposition of consecutive sentences, as governed by the California Penal Code, requires fact-finding which invokes Petitioner's right to a jury trial. (Am. Pet., 14.) Petitioner claims that the California Penal Code makes concurrent sentences the presumptive term and therefore, pursuant to <u>Blakely</u>, consecutive sentencing is a maximum term that can only be imposed through the finding of aggravating circumstances. (<u>Id.</u>) The Court finds this argument unavailing in light of the Supreme Court's decision in <u>Oregon v. Ice</u>, __ U.S. __, 129 S.Ct. (2009).

In <u>Ice</u>, the Supreme Court held that "when a defendant has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions," the Sixth Amendment does not require a jury determination of any fact declared necessary to impose "consecutive in lieu of a concurrent sentences." <u>Id.</u> at 714-15. As <u>Ice</u> holds that consecutive sentences do not garner the Sixth Amendment protections set forth in the <u>Apprendi</u>/<u>Blakely</u>/<u>Cunningham</u> line of cases, the appellate court's decision was not an unreasonable application of clearly established federal law.

B.  Ground Two

Petitioner claims that his due process rights were violated when the court used the same aggravating factors to substantiate imposing upper terms and consecutive sentences.

The last reasoned decision on this issue was by the California Court of Appeal on December 5, 2007. (See Pet. Ex. A, 11.)  The court found that the trial court violated California law when it "used the circumstances of the crime to both impose the aggravated term and the full consecutive term." Id. The court went on to find the error harmless because

> Defendant's prior criminal history was established by means that satisfy Sixth Amendment requirements and thus made him eligible for the upper term.  The circumstances of the crime relied on by the trial court are not contested on appeal and were numerous.  In addition, there were no circumstances in mitigation and the trail court utilized very strong language in imposing the aggravated terms and the consecutive sentences–finding the circumstances in aggravation "greatly outweigh" any in mitigation, and finding that "consecutive sentencing is not only appropriate but demanded."  If we were to remand this case to the trial court for resentencing, we are confident the trial court would impose the identical sentence it originally imposed by aligning the numerous available factors in their proper fashion. "On the record before us it cannot be said that a result more favorable to appellant is reasonable probable on remand. " (Citation omitted.)

(Pet. Ex. A, 11-12.)  Thus, the relevant question here is whether the appellate court's finding that the error of state law was harmless, is an unreasonable application of clearly established federal law.

Respondent argues that this issue is not cognizable on habeas review and cites to Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998) for the proposition that "[a]n alleged error by the state courts in the state post-conviction process is not cognizable in federal habeas corpus." (Answer, 15.) Ortiz is much more narrow than Respondent argues in that it only holds that "federal habeas relief is not available to redress alleged *procedural* errors in state post-conviction proceedings." Ortiz, 149 F.3d at 939.  The issue in this case is substantive; therefore, the court will review the matter.

Habeas relief for a state sentencing error is available only if Petitioner can show that the state court's error resulted in fundamental unfairness.  See Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Respondent argues that the sentencing judge relied on several aggravating factors when imposing the upper and full consecutive terms and therefore the appellate court's finding of harmless error was not an unreasonable application of federal law.  The Court agrees with Respondent.  The trial judge stated the following aggravating circumstances when sentencing Petitioner: (1) the

manner in which the crimes were committed; (2) the fact that the crimes were committed at night in the victim's home with her family present; (3) Petitioner made threats to the victim and her family; (4) the victim's age at the time of the crime; (5) the victim's particular vulnerability with her mother and baby sister in the room; and (6) Petitioner's criminal past. (Lodged Doc. 21, Reporters Transcript on Appeal, 993.) As there were a number of aggravating factors on which the sentencing court relied in imposing upper term and consecutive sentences, the Court finds that the state appellate court's decision was not fundamentally unfair. Accordingly, Petitioner is not entitled to habeas relief on this ground.

C. Ground Three

Petitioner claims that his trial counsel was constitutionally ineffective because counsel failed to object to the dual use of the aggravating circumstances of the crime to both impose upper terms and impose consecutive sentences.

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements: (1) counsel' s performance was deficient and (2) petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687(1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).   Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a "strong presumption that counsel's conduct [falls] within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 687 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)) ; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. Strickland, 466 U.S. at 687.   To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. Id.

As discussed above, the appellate court found that the dual use of aggravating circumstances was harmless. Since the error was harmless, it could not have prejudiced Petitioner, which means that his ineffective assistance of counsel claim must fail.

D.  Ground Four

Petitioner claims that the twenty dollar security fee was imposed retroactively thereby violating his constitutional protection against ex post facto laws.

A federal habeas court can only entertain a petition on the ground that the petitioner "is in custody in violation of the Constitution or laws or treatise of the United States." 28 U.S.C. § 2254(a). The 9th Circuit has interpreted "in custody" to exclude challenges to purely monetary punishments. See Bailey v. Hill, 599 F.3d 976, 978 (9th Cir. 2010) (court found that a state prisoner's challenge to his restitution order was not cognizable under federal habeas review even though he was in custody when he brought the petition). Each claim advanced in a habeas petition must be reviewed independently to ascertain whether Petitioner is challenging his custody. See U.S. v. Thiele, 314 F.3d 399, 402 (9th Cir. 2002). To determine whether each claim is cognizable under federal habeas review, the court must "focus on the relief sought in the claim itself, not on relief sought in other claims mentioned elsewhere in the motion." Id. (citing U.S. v. Kramer, 195 F.3d 1129 (9th Cir. 1999).

In this case, Petitioner states several grounds for relief, one of which challenges the twenty dollar security fee he was assessed. (See Am. Pet., 9.) Because Petitioner's challenge to his twenty dollar security does not claim that he is in custody in violation of federal law, it is not cognizable on federal habeas review. Thus, Petitioner cannot receive relief on this ground.

E.  Ground Five

Petitioner claims that the offenses for which he was convicted were time barred.  Petitioner claims that a change in the statute, expanding the statute of limitations pertaining to his crime from six years to ten years, violated his constitutional protections against *ex post facto* laws.

Article 1, section 10 of the United States Constitution provides that "no state shall . . . pass any . . . ex post facto Law."  This clause prohibits any law that "makes more burdensome the punishment for a crime after its commission."  Beazell v. Ohio, 269 U.S. 167, 169-70 (1925).  A law violates this prohibition if it is both retroactive and detrimental.  Brown v. Palmateer, 379 F.3d 1089, 1093 (9th Cir. 2004) (quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 509 (1995); Weaver v. Graham, 450 U.S. 24, 29 (1981)).  "'The focus of the *ex post facto* inquiry is not whether a legislative change produces some sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'"  Russell v. Gregoire, 123 F. 3d 1079, 1083 (9th Cir. 1997) (quoting Morales, 514 U.S. at 506).

The California Court of Appeal, on June 18, 2008, issued a reasoned opinion finding that the change in the statute of limitations was not an *ex post facto* violation.  The Court agrees.  *Ex post facto* laws change the crime or the punishment for a crime after the defendant has committed the act.  In this case, the crime for which Petitioner was accused and the punishment for that crime remained unchanged from the day he committed the acts.  The statutory change at issue merely changed the period of time in which the state was allowed to prosecute Petitioner for those crimes.  As the statutory amendment challenged by Petitioner does not constitute an *ex post facto* law, Petitioner is not entitled to relief on this ground.

**CONCLUSION**

For the reasons set forth above, Petitioner's claim for habeas relief cannot be granted.

**RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1) the petition for a writ of habeas corpus be DENIED and

2) the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the assigned to the Honorable Anthony

1  W. Ishii, District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days
2  after being served with the Findings and Recommendation, any party may file written objections
3  with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to
4  Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and
5  filed within ten days after service of the objections.  The parties are advised that failure to file
6  objections within the specified time may waive the right to appeal the District Court's order.
7  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
8  IT IS SO ORDERED.
9  **Dated:    October 1, 2010**            /s/ John M. Dixon
                                            UNITED STATES MAGISTRATE JUDGE